# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY.

JUNE TERM, 1856.

Between MARIA VAN MATER and ELLEN VAN MATER, administratrixes of DANIEL VAN MATER, appellants, and JOHN ELY and JOSEPH HOLMES, administrators of DANIEL HOLMES, respondents.

A creditor having a lien on two funds, one only of which is common to other creditors, will not, at the instance of a creditor, be compelled to resort, in the first place, to the individual fund, if by so doing he will be prejudiced.

There were seven judgments against J. and H. Van M., the *fourth* and *sixth* of which were held by Daniel Holmes, and the *fifth* by Daniel Van Mater. Holmes then obtained an assignment of the *first* and *seventh* judgments, taking, as collateral security, a draft, and agreeing to apply the proceeds to the assigned judgments, and to account with J. and H. Van M. for the surplus.

*Held*, that this contract, being exclusively between Daniel Holmes and J. and H. Van M., even if violated, Daniel Van Mater, who was a stranger to it, could not complain of its breach.

*Held further*, that as Daniel Holmes could not, without prejudice to his interests, look to the collateral security in exoneration of the property levied on under the judgments, a court of equity will not compel him so to do.

This case was heard by the Chancellor on bill and de-murrer. *William Haight* and *James S. Nevius* were the counsel of the complainants, and *P. Vredenburgh* for the defendants. The demurrer was sustained, and the Chan-cellor furnished on the appeal the following opinion.

THE CHANCELLOR. The bill is filed by the personal re-presentatives of Daniel Van Mater, deceased, against the administrators of Daniel Holmes, deceased. A general demurrer was filed to the bill. The question submitted is, whether the complainants show any equity entitling them to relief.

Joseph H. Van Mater and Holmes Van Mater were possessed of considerable real and personal estate in the county of Monmouth. They became embarrassed in their pecuniary circumstances, and confessed judgment to a very large amount. Several judgments were also re-covered against them by due course of law. The priorities of the judgments are important. The first judgment was in favor of Garret H. and C. Hendrickson, for $2000; the second, in favor of Middletown Point Bank, for $2500; the third, in favor of Hier, Mairs & Co., for $10,000; the fourth, in favor of Daniel Holmes, for $10,000; the fifth in favor of Daniel Van Mater (the complainants' intestate), for $2000; the sixth in favor of Daniel Holmes, for $8000; and the seventh and last, in favor of Elisha Laird, for $2000.

Upon all these judgments executions were issued, and levies made by the sheriff upon all the real and personal estate of the debtors. The judgment creditors were press-ing for their money, and, in order to avoid a sale of their property, and give them some indulgence, Joseph H. and Holmes Van Mater, the debtors, proposed to Daniel Holmes to take an assignment of the first and last judg-ments, and, as additional security for the payment of those judgments, offered to assign to him a certain ac-cepted draft. The proposition was accepted. The last

judgment, the one in favor of Elisha Laird, was assigned to Holmes, and the first judgment, which was the one in favor of the Hendricksons, was assigned to Holmes, Thomas G. Haight, and Hendrick Longstreet. At the same time, Joseph H. and Holmes Van Mater assigned to Holmes a draft, which had been accepted by several individuals residing in Kentucky, which had been past due some ten months, and upon which there was due about five thousand four hundred dollars.

On the assignment of this draft, Daniel Holmes gave to Joseph H. and Holmes Van Mater a writing, which, after reciting the assignment of the draft, is as follows: "Now the object of this certificate is to declare, that I, the said Daniel Holmes, hold the said assigned bill or draft as collateral security to pay and satisfy to me two certain judgments against the said Joseph H. Van Mater and Holmes Van Mater, one at the suit of Elisha Laird, and the other at the suit of Garret H. Hendrickson and Cyrenius Hendrickson, amounting to some five thousand dollars in the aggregate; and that I am, on the receipt of the balance due on the said bill of exchange or draft, to apply the proceeds thereof, in the first place, to the payment of Elisha Laird's judgment assigned to me, and secondly to be applied to the payment and satisfaction of the said assigned Hendrickson judgment; and if more than sufficient for said purposes, I am to account to the said Joseph H. Van Mater and Holmes Van Mater for such surplus. This certificate being given with the assignment, is to be considered as part thereof, as evidence of the purposes of said assignment."

The assignment was made on the 7th of December, 1842. On the 23d of February following Daniel Holmes received on the draft, from the acceptors, $1650.

On the sixth of March following he ordered the sheriff to sell on the executions in his hands. The sheriff sold all the real and personal estate he had levied on, and, with the money raised by the sale, he paid off the Hendrickson judgment, the Middletown Point Bank judgment, the

Hiers, Mairs & Co's judgment, and all but a small balance of the next judgment in order, which was Daniel Holmes' first judgment. After these judgments were thus paid, Daniel Holmes received the balance due on the draft, about $5200 in all, and more than enough to satisfy the Hendrickson and Laird judgments, as security for the payment of which the draft had been assigned to him. But when he received the money, the Hendrickson judgment had been paid by the proceeds of the sheriff's sale, as before stated. With the money thus received on the draft, Holmes paid off the Laird judgment, which left a balance in his hands of upwards of $3000. Of this balance he paid, on an order drawn upon this specific fund by Joseph H. and Holmes Van Mater, $440.67, leaving in his hands about $3000 unaccounted for. Joseph H. and Holmes Van Mater requested Holmes to pay it on the judgment of the complainants' intestate, which judgment was next in order to Daniel Holmes' first judgment, which had been very nearly satisfied by the proceeds of the sheriff's sale. This Holmes refused to do, but applied it to the payment of his own second judgment, and which was subsequent in time to Daniel Van Mater's judgment, represented by the complainants.

The complainants insist that Daniel Holmes appropriated the proceeds of the draft in violation of his trust; that it ought to have been paid on the Hendrickson judgment; that if it had been so appropriated the common fund in the sheriff's hands would have been relevied, so that Daniel Van Mater's judgment would have been paid by the fund in the hands of the sheriff.

The bill prays that the defendants may be compelled to account for as much of the proceeds of said draft as will pay the judgment of Daniel Van Mater, their intestate.

All the allegations of the bill in any manner material to the case I have stated as facts. They must all be taken as true in deciding this demurrer. No equity can arise in favor of the complainants entitling them to recover of the

defendants upon the mere fact, that Joseph H. and Holmes Van Mater ordered Daniel Holmes to pay the money over to Daniel Van Mater. If the money was really due and owing from Daniel Holmes to Joseph H. and Holmes Van Mater, and if Daniel Holmes had no legal right to hold the money as against them, yet Joseph H. and Holmes Van Mater could not institute any one as the creditor of Daniel Holmes in their stead without his consent. No principle can be more familiar than this. If they had given a written order, and Daniel Holmes had refused to accept it, the payees could have had no claim, either at law or equity, against the person upon whom it was drawn. In the present case the order was a mere verbal one, and there is not the slightest foundation for the complainants to maintain a suit upon this ground. If the complainants are entitled to relief, their right must, in some way, be derived from the application of the principle, that when there are two funds, one only being common to both creditors, the creditor having a lien on the two funds may be compelled, in equity, first to exhaust the fund upon which he has an exclusive lien before he will be permitted to resort to the common fund.

Waiving, for the present, the consideration of the question, whether the complainants have not lost their equity by remaining quiescent, and permitting the common fund to be taken in payment of the Hendrickson judgments, let us see what would have been the equities of the respective parties if, when the common fund was in the hands of the sheriff, Daniel Van Mater had filed a bill claiming the benefit of the collateral security which Daniel Holmes held as the assignee of the Hendrickson judgment.

The Hendrickson judgment and Daniel Van Mater's judgment were liens upon a common fund. Daniel Holmes, who owned the Hendrickson judgment, had in his hands another fund sufficient to pay off the Hendrickson judgment. If so appropriated it would relieve the

Van Mater *v.* Ely.

common fund, so as to pay off the Daniel Van Mater judgment. But Daniel Holmes would have answered— "true, I have another fund, which is sufficient to pay off the Hendrickson judgment; but I have another judgment of my own against the common debtor, and which, like yours, is a lien upon the common fund, but it is subsequent to your judgment, and my only means of payment is to pay the Hendrickson judgment out of the common fund." Daniel Holmes had a right, as against the common debtor, to appropriate the collateral to the payment of his judgment, which was subsequent to Daniel Van Mater's judgment. By taking the collateral, as between himself and his debtor, he relinquished no lien which the Hendrickson judgment had, and he might resort to any of the securities he saw fit. 1 *Story* 640. He did not bind himself to appropriate first the collateral, before resorting to the real and personal property bound by the judgments.

Here, then, is a case where, if the creditor is driven from the common fund, he is injured by being deprived of the means of payment of another debt. What superior equity has Daniel Van Mater's judgment to this fund in Daniel Holmes' hands over Daniel Holmes' judgment? Only this, that it is a prior judgment, and therefore is entitled to the equities of the most diligent creditors. But, to counterbalance that equity, Daniel Holmes' vigilance has got a fund into his possession which neither judgment could reach. Neither judgment was a lien upon the fund. The only question is, which has the most equity. But if the equities are equal the court 'will not interfere. The court will not compel the creditor to resort to the common fund to his own prejudice or injury.

In looking at the case from this point, there is another consideration which is not to be lost sight of. When the Hendricksons and Daniel Van Mater obtained their judgments, they took out executions upon them, and perfected their liens upon the property of their debtors. It was

subsequent to this that Holmes, upon consideration that he would advance the money and take the assignment, received the collateral. He took it for his own safety. There is no allegation that he received it for the purpose or with the view of bettering the condition of the other judgment creditors; on the contrary, it is evident that such was not the intention of either the assignor or assignee of the collateral, for the acknowledgment of its receipt, given by Daniel Holmes, expressly bound him to account to Joseph H. and Holmes Van Mater. The security of the complainants is not at all lessened by anything Daniel Holmes has done.

But the position of the complainants is not as favorable as if they had filed their bill before the funds had actually been appropriated. The real and personal estate of the debtors was sold under the judgments and executions, without any remonstrance or interference of the complainants. Daniel Holmes had then realized nothing on the collateral to pay the Hendrickson judgment. The common fund was appropriated for the purpose, and by it the judgment was satisfied. Subsequently the money was received upon the collateral, and Daniel Holmes, as he had a right to do, both in law and equity, applied the money to pay a judgment debt which the debtors owed him.

Under these circumstances, I cannot see upon what principle of equity the defendants can be called upon to account to the complainants for the proceeds of the collateral held by Daniel Holmes.

The Chief Justice delivered the opinion of the court.

GREEN, C. J. The appellants, the complainants below, by their bill seek to recover from the defendants the amount of a judgment recovered by their intestate, Daniel Van Mater, in his lifetime, against Joseph H. Van Mater and Holmes Van Mater. The question presented on the demurrer for the consideration of the court

is simply whether there be any equity in the complainants' bill.

The claim of the complainants for relief rests upon two grounds, *viz.*—1, upon a contract entered into by Daniel Holmes, the respondents' intestate, in his lifetime—and 2, upon a general principle of equity (independent of the contract), which it is insisted entitles the complainants to have certain moneys in the hands of the defendants appropriated in payment of their judgment against Joseph H. and Holmes Van Mater. The two grounds of relief claim distinct and separate consideration.

The bill shows that the Van Maters, being the owners of a large and valuable estate, were heavily encumbered by a large amount of judgment debts, upon which executions had been issued and levied, and some of which were being pressed for payment. Among these encumbrances the judgment of Daniel Van Mater, the complainants' intestate, was the *fifth* in order. Daniel Holmes, the respondents' intestate, held two judgments, which were the *fourth* and *sixth* in order and priority, Daniel Van Mater's judgment intervening between the first and second judgments of Holmes. The *first* and *seventh* judgments were being pressed for satisfaction. In this state of things, the Van Maters (the defendants in execution) proposed to Holmes to take an assignment of the first and last judgments, and as an additional security for the payment of the judgments, offered to assign to him a certain accepted draft. The proposition was accepted. The judgments were assigned to Holmes, who also took an assignment of the draft. Upon the assignment of the draft, Holmes gave to the Van Maters a certificate in writing, stating distinctly the purpose of the assignment, *viz.* that it was taken as collateral security to satisfy Holmes, the first and last of the judgments against the Van Maters, assigned to Holmes, and if more than sufficient for those purposes, Holmes was to account to the Van Maters for the surplus.

The agreement was exclusively between Holmes and the Van Maters, the defendants in execution. Daniel Van Mater is no party to the contract. There is no stipulation in the contract in his favor, nor any intimation that it was intended for the benefit of any other creditor than Holmes himself. If Holmes has violated the contract, in letter or in spirit, the defendants in execution, with whom the contract was made, have a remedy. But it is not perceived upon what possible ground Daniel Van Mater, or his administrators, can complain of a breach of contract entered into by Holmes with other parties. Nor can an order in his favor, verbal or written, by the Van Maters place him in any better position, or give him any additional right as against Holmes. The complainants can have no remedy upon the contract, admitting that it was violated.

The complainants further insist—that Daniel Holmes, having two funds as security for the payment of the first judgment (*viz.* the real estate levied upon and the draft), upon one of which only Daniel Van Mater had a claim for the payment of his judgment, he is entitled to have the common fund relieved of the encumbrance of Holmes' judgment, and to have that judgment satisfied out of the other fund in his hands. The Chancellor has given a clear and satisfactory answer to this claim, *viz.* that Holmes had a subsequent judgment against the common debtor, which was also a lien on the common fund subsequent to that of Van Mater, and for the satisfaction of which he was entitled, in equity, to have his first judgment satisfied out of the common fund. If Holmes had been driven to the other fund to obtain satisfaction of his first judgment, it must have been to the prejudice of his claim under the subsequent judgment. But equity will not compel the creditor to resort to either fund to his own prejudice or injury.

The decree should be affirmed.

The decree of the Chancellor was unanimously affirmed.